UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRAVIS HEFFLEY,

                Plaintiff,

        -against-

FCI OTISVILLE,

                Defendant.

18-CV-1630 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

    Plaintiff, currently incarcerated at FCI Otisville in Otisville, New York, brings this *pro se* action alleging that on two occasions, he was disciplined based on false charges that he was insolent toward U.S. Bureau of Prisons correctional officers. By order dated May 9, 2018, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*.[1]

## STANDARD OF REVIEW

    The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(b)(1).

*suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

The following allegations are from Plaintiff Travis Heffley's complaint. On June 21, 2017, Plaintiff sent an email to a female "administrative health care official." (Compl. at 12.) According to the incident report annexed to the complaint, the email states, "Why are you cutting off the blood supply to my cock. It is causing me a lot of pain." (*Id.* at 13.) Plaintiff "sent the email on June 21[,] and on June 22 [he] was sent to the SHU." (*Id.* at 12.)

Based on the email, Plaintiff initially received a disciplinary charge for violating prison regulation 312, prohibiting insolence toward a staff member, which carries "moderate penalties." 28 C.F.R. § 541.3 (listing prohibited acts and sanctions). The Committee Decision annexed to the complaint states that it "changed code to 404 use of obscene or abusive language," a low level prohibited act, and that it "sanctions inmate to 30 [days] email restrictivity, already completed." (*Id.* at 14.)

Plaintiff appealed that decision, arguing that there was nothing obscene about his word choice. In the Administrative Remedy Response, the Warden stated: "While you may consider the term in question slang, . . . the term is clearly a vulgarism, which you elected to use as euphemism to replace polite language." (*Id.* at 16.) The Warden's response also noted that "the instant allegation of insolence is not an isolated instance." (*Id.*) Plaintiff contends that in disciplining him for his speech, Defendants violated his rights under the First Amendment.

A second incident took place at FCI Otisville on the morning of October 3, 2017. Plaintiff alleges that an FCI staff member claimed that Plaintiff was insolent, and as a result, he was "held in the SHU [segregated housing unit ("SHU")] for sixteen days [until] a hearing was held." (*Id.* at 2.)

A disciplinary hearing was held on October 19, 2017, sixteen days after the incident. The hearing officer summarized the conflicting testimony: Correction Officer Hanna filed an incident report stating that he instructed Plaintiff to step out of his cell for it to be searched. Plaintiff did not do so, and when Officer Hanna asked whether Plaintiff had heard him, Plaintiff retorted, "Did you hear me say shut the fuck up?" In his report, Officer Hanna wrote that he responded, "I am sorry. Did I hear you right?" and Plaintiff stated, "You will be sorry." Officer Hanna stated "I order you to step out of the cell," and Plaintiff replied, "And I told you to shut up." (*Id.* at 8.) By contrast, in Plaintiff's testimony at the hearing, he stated that Correction Officer Hanna watched him brush his teeth but neither one said anything.

The hearing officer concluded that Plaintiff's version of events was "unlikely," and found Plaintiff guilty of refusing to obey and order and insolence toward a staff member, and imposed loss of commissary for 90 days and loss of phone privileges for 180 days. On appeal, Plaintiff argued that the evidence did not support the hearing officer's decision "since there [wa]s no way to prove that [he] said anything to Officer Hannah." (*Id.* at 4.) On December 21, 2017, the Regional Director "partially granted" the appeal, and the matter was "remanded for further review." (*Id.*) Plaintiff does not plead any facts about any further proceedings after remand in the disciplinary matter.

Plaintiff names FCI Otisville as the sole Defendant in the complaint and seeks damages for violations of his rights under the First Amendment. The Court also construes Plaintiff's allegations seeking damages for time spent in the SHU as a claim for a violation of his right to due process.

**DISCUSSION**

A.      **Claim under Bivens Against FCI Otisville**

Because Plaintiff alleges that federal employees at FCI Otisville violated his constitutional rights, the Court liberally construes Plaintiff's complaint as asserting claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which is "the federal analog to suits brought against state officials under [§ 1983]." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Morales v. City of New York*, 752 F.3d 234, 237 (2d Cir. 2014) (holding that district court properly construed § 1983 claims brought against federal employee as arising under *Bivens*).

The purpose of an implied *Bivens* action "is to deter individual federal officers from committing constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Because of this, a *Bivens* claim will lie only against an individual in a personal capacity, and not against a federal agency or against federal officials in their official capacities. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994). Plaintiff has not named any individuals as defendants, and he cannot state a *Bivens* claim against FCI Otisville, a facility operated by the U.S. Bureau of Prisons. The Court therefore dismisses any claims under *Bivens* against FCI Otisville, which is the sole defendant named in this action.

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects unless it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The Court therefore considers whether to allow Plaintiff to amend his complaint to seek damages from any individual defendant under *Bivens*.

In *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), the Supreme Court made clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." Generally, "the *Bivens*

4

question . . . is 'antecedent' to the other questions presented," but the Supreme Court has endorsed "disposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (noting that "this approach . . . is appropriate in many cases[] [and] [the] Court has taken [this] approach on occasion"). Even assuming for the purposes of this order that the Court could imply a *Bivens* remedy for a violation of Plaintiff's First Amendment or Due Process rights, the allegations fail to state a claim on which relief can be granted under the First Amendment or Due Process Clause.

### 1. First Amendment Claim

"A prison inmate . . . retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (quoting *Giano v. Senkowski*, 54 F.3d 1050, 1053 (2d Cir.1995)). Those rights include "some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). To prevail on a First Amendment retaliation claim, a prisoner must demonstrate "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

Plaintiff arguably fails to satify the first element because vulgar, insulting, and threatening statements have been found not to be protected speech for purposes of the First Amendment. *See Jackson v. Onondaga Cnty*, 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008) (holding that profane or threatening language in addressing corrections staff is not protected speech). The crux of Plaintiff's claim is that his speech was *not* vulgar. But prison officials,

5

taking into account Plaintiff's disciplinary history, have already determined that Plaintiff "intentionally chose to use a vulgarity in place of polite language" and sanctioned him with limitations on email use under prison regulation 404, which prohibits obscene or abusive language  (Compl. at 16).

When a prison regulation impinges on inmates' constitutional rights, courts consider "the relationship between the asserted penological interests and the prison regulation," and generally cannot "enhance constitutional protection based on their assessments of the content of the particular communications." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). "Legitimate penological interests in rehabilitation and preserving institutional authority permit prison officials to discipline inmates who engage in harassing and insulting behavior." *Allah–Kasiem v. Sidorowicz*, 09-CV-9665 (DLC), 2012 WL 2912930, *9 (S.D.N.Y. July 17, 2012); *Hunnicutt v. Arhone*, No. 07-CV-1422 (HBF), 2012 WL 4511379, at *18 (D. Conn. Oct. 1, 2012) (confiscating a prisoner's sexually explicit cartoon was "rationally related to reasonable objectives of prison administration" in security and safety, which objectives are facially neutral and "not related solely to the suppression of expression").

Prison officials had a legitimate penological interest in disciplining Plaintiff for language that they concluded was vulgar, and there is no reason here to second guess that determination. *See, e.g., Bacon v. Phelps*, No. 15-CV-1502 (DNH)(CFH), 2017 WL 4220465, at *4 (N.D.N.Y. July 6, 2017), *report and recommendation adopted*, 2017 WL 4221073 (N.D.N.Y. Sept. 21, 2017) (dismissing claims because "[t]he facts . . . do not plausibly suggest that [prisoner's] sexual comments regarding a female prison guard were protected under the First Amendment" and "even if such speech could fall under any First Amendment protections, a prison facility has legitimate penological interest in prohibiting such conduct."). Plaintiff's allegations that prison

officials sanctioned him for speech perceived to be vulgar, where such decision was rationally related to reasonable objectives of prison administration, therefore do not state a claim for a violation of his First Amendment rights. Accordingly, it would be futile to grant Plaintiff leave to amend his complaint to name the federal officials who were personally involved in the incident that gave rise to his First Amendment claim.

## 2. Procedural Due Process

A plaintiff seeking to establish a procedural due process claim must allege that (1) he possessed a life, liberty, or property interest, and (2) the defendants deprived him of that interest without providing constitutionally adequate process. *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004).[2] Plaintiff's allegations are insufficient to plead the deprivation of a liberty interest.

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (quoting *Jones v. No. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977)). "A prisoner's liberty interest is implicated by prison discipline, such as [segregated housing unit] SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v*, 515 U.S. at 484); *Tellier v. Fields*, 280 F.3d 69 (2d Cir. 2000) (holding, pre- *Abbasi*, that federal prisoner who was held in administrative detention for 514 days alleged an atypical and significant hardship for purposes of a Fifth Amendment due process claim).[3] Determining

---

[2] Caselaw from actions brought under § 1983 may be used to address issues raised in *Bivens* cases. *See Butz v. Economou*, 438 U.S. 478, 498-99 (1978); *Shue v. United States*, 466 F. App'x 51, 51 (2012) (citing *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995)).

[3] The Court also held in *Tellier* that because the Warden's initial decision to place a federal prisoner in administrative detention in the SHU is discretionary, *see* 28 C.F.R. § 541.22(a)(1)-(6), a prisoner has no protected liberty interest that is violated when the Warden removes him or her from the general population. *Tellier*, 280 F.3d at 82 (noting that the

whether the hardship imposed is "atypical and significant" requires consideration of "[b]oth the conditions and their duration." *Palmer*, 364 F.3d at 64 (internal quotation marks omitted).

"[C]onfinement of less than 101 days of 'normal' [SHU] confinement does not meet the *Sandin* standard of atypicality," *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004), though "abnormal or unusual conditions departing from 'normal' confinement in the [SHU] may cause periods of confinement of less than 101 days to be atypical and impose significant hardship." *Id.* The Second Circuit has "affirmed dismissal of due process claims [on the ground that there is no liberty interest at issue] only in cases where the period of time spent in SHU was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66.

In his complaint seeking damages from FCI Otisville, Plaintiff alleges that in connection with one infraction, he spent 16 days in administrative detention in SHU.[4] Plaintiff makes no allegation that he endured unusually harsh conditions. For another infraction, it appears that Plaintiff was sanctioned to loss of commissary for 90 days and loss of phone privileges for 180 days.  Plaintiff's allegations do not suffice to plead that, while a prisoner, he endured an "atypical and significant hardship" implicating his liberty interest. Absent deprivation of life, liberty, or property, Plaintiff cannot state a claim that Defendant denied his right to due process. It would therefore be futile to grant Plaintiff leave to amend to plead a due process claim for damages against an individual defendant.

---

regulations mandate release when the reasons for confinement in segregated housing no longer exist).

[4] Because Plaintiff does not allege that this was part of his sanction, this appears to refer to the time that he spent administrative detention while awaiting the disciplinary hearing.

B.   **FCI Otisville**

Sovereign immunity bars federal courts from hearing all suits for monetary damages against the federal government, including suits against its agencies and its officers and employees in their official capacities, except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). FCI Otisville, which is a facility operated by the U.S. Bureau of Prisons, enjoys sovereign immunity.

The Federal Tort Claims Act (FTCA) provides a limited waiver of sovereign immunity for certain suits arising from injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of [her] office or employment." 28 U.S.C. § 1346(b)(1). The FTCA thus makes "the [f]ederal [g]overnment liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976); *accord Mathirampuzha v. Potter*, 548 F.3d 70, 80 (2d Cir. 2008); *see* 28 U.S.C. § 1346(b)(1). But the United States has not waived its immunity "with respect to claims that its employees have committed constitutional torts." *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994).

Moreover, before bringing a claim in a federal district court under the FTCA, a claimant must comply with the FTCA's procedural requirements. *See Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 147 (2d Cir. 2013). The FTCA's exhaustion requirement is jurisdictional and cannot be waived. *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

To pursue an FTCA claim relating to the BOP, a claimant must submit an Administrative Tort Claim to the appropriate BOP Regional Office, 28 C.F.R. § 543.31(b), and appeal to the

General Counsel's office,  28 C.F.R. § 543.32.[5] Plaintiff does not allege that he filed an Administrative Tort Claim in the appropriate BOP Regional Office or an appeal to the General Counsel's Office.[6] Thus, Plaintiff has not exhausted his administrative remedies for an FTCA claim. The Court therefore dismisses Plaintiff's claims for damages against FCI Otisville based on sovereign immunity and declines to recharacterize Plaintiff's claim against FCI Otisville as an action under the FTCA against the United States.

## C.     Leave to Amend Futile

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin*, 861 F.2d at 42. The Court concludes that it would be futile to grant Plaintiff leave to amend his complaint because the defects cannot be cured with amendment.

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii),(iii).

---

[5] "The available prison grievance remedies for a *Bivens* claim, consist of a four-step set of procedures set forth in the BOP's Administrative Remedy Program, 28 C.F.R. § 542. . . . The FTCA's administrative review requirements, on the other hand, merely require an inmate to file his or her claim with the Regional Office and appeal to the General Counsel's office. . . ." *Owusu v. Fed. Bureau of Prisons*, No. 02-CV-0915 (NRB), 2003 WL 68031, at *2 (S.D.N.Y. Jan. 7, 2003) (citing 28 C.F.R. §§ 543 .31, 543.32).

[6] Instead, Plaintiff appears to have alleges pursued some of the steps in the BOP's Administrative Remedy Program, 28 C.F.R. § 542, for prison grievances.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: October 1, 2018
       New York, New York

                                              Louis L. Stanton
                                                   U.S.D.J.